UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL W.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:26-CV-5488-DWC

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION DENYING BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of his application for Supplemental Security Income ("SSI") benefits.[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in evaluating the medical opinion evidence. Had the ALJ properly considered this evidence, Plaintiff's residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is, therefore, not harmless, and this matter is reversed and remanded pursuant to

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 6.

sentence four of 42 U.S.C. § 405(g) to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## I. Factual and Procedural History

On September 22, 2022, Plaintiff filed an application for SSI benefits, alleging his disability began that date. *See* Dkt. 7, Administrative Record ("AR") 17; *see also* 20 C.F.R. § 416.501 ("Payment of [SSI] benefits may not be made for any period that precedes the first month following the date on which an application is filed"). The application was denied on initial administrative review and reconsideration. AR 17. A hearing was held before ALJ David Johnson on April 15, 2025. AR 151-186. Following the hearing, the ALJ determined Plaintiff was not disabled. AR 17-34. The Appeals Council denied Plaintiff's administrative appeal, making the ALJ's decision the final decision of the Commissioner. AR 1-6; *see* 20 C.F.R. § 416.1481. Plaintiff now appeals the ALJ's decision finding Plaintiff not disabled.

In the Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to properly weigh the medical opinion evidence; and (2) improperly rejecting Plaintiff's subjective claims. Dkt. 14, p. 1. Although Plaintiff alleged difficulty with both his physical and psychological functioning before the agency, his psychological functioning is the central issue on appeal. Plaintiff requests the Court remand this case for an award of benefits. Dkt. 14, p. 11.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

## III. Discussion

### A. *Medical Opinion Evidence*

Plaintiff contends the ALJ erred in weighing the opinions of Kathryn Johnson, Ph.D., and Margie Williams, PMHNP-BC. Dkt. 14. ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate each opinion's persuasiveness using a series of factors. *See* 20 C.F.R. § 416.920c(a). The two most important factors are the opinion's "supportability" and "consistency." *Id.* ALJs must explain "how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [their] . . . decision." 20 C.F.R. § 416.920c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-2 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also* § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); *see also* § 416.920c(c)(2). Because the ALJ harmfully erred in evaluating Dr. Johnson's opinion, remand is required.

#### *i. Dr. Johnson*

Dr. Johnson conducted a psychological diagnostic interview of Plaintiff on April 12, 2023, at the agency's request. AR 492-97. Dr. Johnson's assessment included a clinical

interview, mental status examination, and review of some of Plaintiff's treatment notes. *Id.* Notably, a Patient Health Questionnaire (PHQ)-9 assessment[2] showed moderately severe depression, and Plaintiff's mental status examination revealed "chronic suicidal ideation." AR 494-95.

Dr. Johnson concluded Plaintiff had "longstanding depression as well as maladaptive personality traits with episodic flare-ups that impact function." AR 497. Dr. Johnson stated Plaintiff lacked "meaningful work history and would likely fail if he were to seek work in a competitive workplace environment." *Id.* Plaintiff was "easily overwhelmed" and would "struggle to understand, remember, and carry out complex instructions." *Id.* He had a "moderate degree of impairment in his ability to interact appropriately and consistently with coworkers and supervisors." *Id.* Lastly, Dr. Johnson wrote that:

> [Plaintiff's] ability to respond appropriately to usual work situations and to tolerate the stressors of a typical workplace would be markedly impaired. Although the claimant may be able to perform quite well for periods of time, inconsistency would likely be a significant issue in the workplace due to the episodic and reactive nature of his condition.

*Id.*

The ALJ considered Dr. Johnson's opinion but found it not persuasive. AR 26. Regarding Plaintiff's marked impairment in responding to usual work situations and tolerating typical workplace stressors, the ALJ found, in part, that "the occupations identified by the vocational expert as limited by the residual functional capacity reflect limited stressors and a more limited situation than all usual workplace situations." *Id.* This reasoning is problematic. First, as Plaintiff notes, Dkt. 14 at 6, the ALJ's analysis gets the order of operations backwards:

---

[2] The PHQ-9 is a "self-report measure designed to screen depressive symptoms." *Depression Assessment Instruments*, American Psychological Association (October 6, 2026), https://www.apa.org/depression-guideline/assessment.

ALJs are tasked with weighing medical opinions as part of formulating the residual functional capacity finding, not formulating a residual functional capacity finding then evaluating whether a medical opinion comports with it. *See* Social Security Ruling ("SSR") 96-8p (explaining that RFC is "based on all relevant evidence in the case record, including . . . any 'medical source statements'"). The ALJ's reasoning on this point was, therefore, legal error.

Second, the vocational expert's ("VE") testimony suggested the jobs relied on by the ALJ conflicted with Dr. Johnson's opinion. AR 28, 177-79. The ALJ's vocational hypothetical required a predictable routine and adaptation to no more than simple changes, among other restrictions. AR 177. The VE testified that work as a hand packager, industrial cleaner, and hospital food service worker would be available. *Id.* However, when the ALJ asked if the jobs "required adaptation to any changes or is the predictable routine going to stay the same?" the VE testified "I mean, there's changes, there's always changes." AR 178. Similarly, when asked about the food service worker position, the VE testified there may be "a temperament you might experience with a certain patient just interacting or delivering the tray," such as "a little anger at being late or not liking the food . . . the hospital prepared or whoever prepared it, those types of things. So predictable still but in that case maybe not always routine." AR 178-79. A marked restriction in the "ability to respond appropriately to usual work situations and to tolerate the stressors of a typical workplace" conflicts with workplaces where there are "always changes," or where the predictable work situations aren't routine, such as a hospital service worker dealing with an angry patient. To the extent the ALJ rejected Dr. Johnson's opinion based on the RFC and jobs identified at step five, this reasoning was not supported by substantial evidence.

The Commissioner argues Dr. Johnson's "marked limitations were irrelevant considering the RFC," and that "[c]onceivably, the ALJ could have accepted Dr. Johnson's limitation and

simply found that it did not preclude the jobs identified at step five." Dkt. 15 at 5-6. But, as the VE testimony shows, Dr. Johnson's marked restrictions conflicted with the jobs identified. And the ALJ did not accept Dr. Johnson's marked restrictions – the ALJ rejected them. Had the ALJ accepted them it is not clear, as the Commissioner suggests, that the disability analysis would remain the same. The ALJ's analysis on this issue was error.

The ALJ also determined Dr. Johnson's marked restrictions were not supported by her examination, including that Plaintiff's only abnormal finding on mental status examination was suicidal ideation. AR 26. But suicidal ideation is a significant finding, and Dr. Johnson's conclusion also benefited from her clinical interview and a PHQ-9 screening. AR 492-494. The clinical interview, in particular, is an objective measure in the context of a psychological assessment. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). There, Plaintiff said his depression and suicidal ideation had ruined relationships. AR 494. He was waiting for his son to be more grown up before taking his life, and, when he considered suicide, thought of jumping from a high place. *Id.* He reported depression and generalized anxiety, saying "I'm always down compared to other people . . . sometimes it's pretty bad." *Id.* The PHQ-9 assessment, as mentioned, showed moderately severe depression. *Id.* Plaintiff did have many normal mental status findings, but that did not conflict with a core aspect of Dr. Johnson's opinion: that although Plaintiff "may be able to perform quite well for periods of time, inconsistency would likely be a significant issue in the workplace due to the episodic and reactive nature of his condition." AR 497. Dr. Johnson's opinion was focused on Plaintiff's longitudinal functioning, including the episodic and reactive nature of his condition. The ALJ's focus on the normal

mental status examination findings, therefore, were not sufficient to reject Dr. Johnson's conclusions.

The ALJ took issue with Dr. Johnson's opinion regarding the episodic and reactive nature of his condition, stating it was "inconsistent with treatment notes consistently showing fair impulse control, full insight, and fair judgment despite passive suicidal ideation." AR 26. To the contrary, the treatment notes cited by the ALJ supported Dr. Johnson's opinion. On December 2, 2024, for example, Plaintiff reported sadness, irritability, anhedonia, mood lability, crying spells, concentration problems, hopelessness, suicidal ideation, and restlessness. AR 667. Plaintiff's mental status examination showed he was guarded, critical, sullen, and withdrawn. AR 668. He had avoidant eye contact, decreased speech tone, decreased speech rate, and flat affect. *Id.* While Plaintiff had fair impulse control, full insight, and fair judgment on that day, the ALJ's analysis did not address the other negative mental status examination findings. Other visits were similar. *See, e.g.,* AR 675-77 (reporting sadness, irritability, crying spells and suicidal ideation, with avoidant eye contact, decreased speech tone and rate, and suicidal ideation), 703-05 (reporting depression, sadness, hopelessness, and reduced concentration with guarded, evasive and apathetic behavior, body odor, downcast eyes, and suicidal ideation), 704 (guarded, critical, sullen and withdrawn attitude), 722 (guarded, critical, sullen and withdrawn attitude with suicidal ideation), 731 (same), 838-839 (same), 848 (same). While Plaintiff had visits where his complaints and mental status examinations were less significant, this was consistent with Dr. Johnson's opinion regarding the episodic and reactive nature of his condition. Because these treatment notes supported, rather than detracted from, Dr. Johnson's conclusions, the ALJ erred.

Lastly, the ALJ determined Dr. Johnson's opinion was, in part, a disability conclusion on an issue reserved to the Commissioner. AR 26. Under the Commissioner's regulations, a

statement that a claimant is not "able to work" is an opinion on an issue reserved to the Commissioner, and therefore "inherently neither valuable or persuasive." 20 C.F.R. § 416.920b(c). Dr. Johnson stated Plaintiff "would likely fail if he were to seek work in a competitive workplace environment." AR 497. The ALJ's analysis of this aspect of Dr. Johnson's opinion was consistent with the regulations. This reasoning, however, does not extend to the other aspects of Dr. Johnson's opinion, and therefore does not change the analysis above. Remand is required to address these deficiencies.

*ii. Harmless Error*

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is non-prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The Ninth Circuit has stated "'a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout*, 454 F.3d at 1055-56). The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

As discussed, Dr. Johnson determined Plaintiff was markedly impaired in his ability to respond appropriately to usual work situations and tolerate the stressors of a typical workplace, and that inconsistency would likely be a significant issue due to the episodic and reactive nature

of Plaintiff's condition. Had the ALJ properly considered Dr. Johnson's opinion, the RFC may have included additional limitations that would change the ultimate disability determination. Accordingly, the ALJ's error is not harmless and requires reversal.

B. *Subjective Symptom Testimony*

Plaintiff alleges the ALJ failed to provide legally sufficient reasons to discount Plaintiff's subjective symptom testimony. Dkt. 14 at 9-10. The Court concludes the ALJ committed harmful error in assessing the medical opinion evidence. On remand, Plaintiff may be able to present new evidence and new testimony and the ALJ's reconsideration of the medical evidence may impact his assessment of Plaintiff's testimony. Therefore, on remand, the ALJ must reconsider Plaintiff's testimony.

C. *Remand for Further Proceedings*

Plaintiff argues this case should be remanded for an award of benefits. Dkt. 14 at 11. Defendant maintains there are outstanding issues that must be resolved on remand. Dkt. 15 at 16-17. The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke*, 379 F.3d at 595 (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

The Court has determined the ALJ must re-evaluate the medical opinion evidence and Plaintiff's testimony, and finds issues remain which must be resolved concerning Plaintiff's functional capabilities. Therefore, remand for further administrative proceedings is appropriate.

**IV. Conclusion**

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, the Commissioner's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 6th day of October, 2026.

David W. Christel
United States Magistrate Judge